IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ROBERT DRUMMOND
o/b/o CARLA DRUMMOND,

        Plaintiff,
vs.                                **Case No. 09-4055-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

## MEMORANDUM AND ORDER

On June 20, 2005, Carla Drummond filed an application for social security disability insurance benefits and an application for supplemental security income benefits. These applications alleged a disability onset date of January 15, 2002, but this was later amended to June 17, 2005. On January 17, 2007, a hearing was conducted upon the applications. Carla Drummond died on June 2, 2007, before a decision was issued. Robert Drummond, Carla's husband, was substituted as the party seeking benefits upon the applications.[1] The administrative law judge (ALJ) conducted a supplemental hearing upon the applications on September 27, 2007. The ALJ decided that benefits should not be awarded upon either application. This decision has been adopted by defendant. This case is now before the court upon Robert Drummond's action to

---

[1] Defendant suggests that Robert Drummond's relationship to Carla Drummond may become a contested issue. Doc. No. 15 at p. 2 n. 2. At this point, however, it is not disputed.

reverse and remand the decision to deny the applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). Disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record fairly detracts

2

from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 23-36).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 24-25). First, it is determined whether the claimant engaged in substantial gainful activity after the alleged onset date of disability. Second, the ALJ decides whether the claimant had a medically determinable impairment that was "severe" or a combination of impairments which were "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments met or medically equaled the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant had the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the

3

last step of the sequential evaluation process the ALJ determines whether the claimant was able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided that the applications should be denied on the basis of the fifth step of the evaluation process. The ALJ decided that Carla Drummond, while she lived, maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, Carla Drummond ("Drummond") met the insured status requirements for Social Security benefits through June 30, 2007. Second, Drummond did not engage in substantial gainful activity after June 17, 2005, the amended onset date of disability. Third, Drummond had the following severe impairments prior to her death: degenerative disc disease of the lumbar spine, hepatitis C, obesity, and chronic obstructive lung disease. The ALJ further found that Drummond had a non-severe disorder of depression and a history of drug and alcohol abuse. Fourth, Drummond did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, Drummond had the residual functional capacity (RFC) to perform work which required: lifting or carrying up to 10 to 18 pounds occasionally and up to 10 pounds frequently; sitting

up to 60 minutes at a time and 6 hours total of an 8-hour workday; and standing or walking up to 60 minutes at a time and 2 hours total of an 8-hour workday. The ALJ further found that Drummond had to avoid more than occasional pushing and pulling with the right leg. He also determined: that Drummond had nonexertional limitations which precluded more than occasional balancing, bending, stooping and squatting; that Drummond was required to avoid exposure to extreme dust, smoke and fumes; that Drummond had to avoid all exposure to heights; and that Drummond was restricted to routine work not involving performance of complex tasks. Finally, according to the ALJ, Drummond was unable to perform any past relevant work from the alleged onset date of disability to the date of her death, but Drummond <u>was</u> capable of performing jobs that existed in significant numbers in the national economy, such as marker, order clerk, and document preparer.

III. ARGUMENTS AND ANALYSIS

Plaintiff's arguments in this matter concern the ALJ's evaluation of Drummond's treating physician's opinion and the ALJ's evaluation of a non-examining physician's opinion. As noted previously, Drummond alleged a disability onset date of June 17, 2005. It was on this date that Drummond injured her back while attempting to move some heavy clothes line poles. This case largely pivots upon the ALJ's decision regarding the effects of that back injury in conjunction with plaintiff's other physical and

5

mental problems.

   A. <u>Drummond's treating physician</u>

Drummond's treating physician was Dr. Ann Taylor. Dr. Taylor completed a physical residual functional capacity assessment on January 5, 2007. (Tr. 396-403). Dr. Taylor stated that Drummond had spinal stenosis and a disc herniation which caused severe pain and numbness. She found that the severity of Drummond's symptoms was high and that she suffered extreme pain upon movement and upon using her back or accessory muscles. She concluded: that Drummond was unable to lift more than 10 pounds; that Drummond could not walk more than 100 feet without stopping; and that Drummond suffered numbness in her right leg if she sat and stood for prolonged periods of time. She stated that Drummond could not stand for 2 hours in an eight-hour day or sit for 6 hours in an eight-hour day. Dr. Taylor reported that Drummond could "occasionally" climb, balance, kneel and crawl and that Drummond could "never" stoop or crouch.

The ALJ made the following comments about Dr. Taylor's opinion:

> Dr. Taylor has treated the claimant since September 2002. However, her objective records do not show any significant findings other than obesity, with a weight of 292 pounds on January 31, 2006 and 300 pounds on October 25, 2006. They documented the claimant's allegations of pain and limitations and repeated requests for pain medications. The claimant's later reported abuse of prescription pain medications furnishes a basis other than pain for her continued reports of pain and requests for pain medication. Dr. Taylor's opinions are not

supported by her objective findings and therefore, not entitled to controlling weight.

Since they cannot be entitled to controlling weight, Dr. Taylor's opinions must be evaluated to determine what weight can be given. The claimant has a longstanding treatment relationship with Dr. Taylor, but generally saw Dr. Taylor's physician's assistant during medical visits. She also saw other physicians at Dr. Taylor's office, Rooks County Medical Associates, P.A., who did not furnish an opinion regarding disability. Dr. Taylor did not refer the claimant to an orthopedic specialist, indicating that she did not furnish full credibility to the claimant's allegations of excruciating pain. Her opinion appears based almost entirely on the claimant's subjective allegations, which the undersigned has not found credible. The undersigned has given some weight to Dr. Taylor's recommendations for sedentary work, but otherwise finds that Dr. Taylor's opinions are unsupported and not entitled to substantial weight.

(Tr. 33).

The ALJ determined that he would base his evaluation of Drummond's RFC upon the testimony of a non-examining physician who testified before the ALJ during the supplemental hearing conducted after Drummond's death. This physician was Dr. Anne Winkler. Dr. Winkler testified that she was board certified in internal medicine and rheumatology. (Tr. 80). Dr. Winkler stated:

[L]ooking at the MRI report [Drummond] should have been able to lift or carry 15 pounds occasionally and ten pounds frequently. I would limit standing and walking to no more than two hours a day and sitting to six hours a day. She might also need to change positions perhaps every hour or two. Pushing or pulling would not be limited in the upper extremities or the lower extremities to occasional on the right leg. Postural limits, occasional stairs, never ladders, ropes or scaffolds, occasional balance, occasional bend and stoop, never crawl, occasional crouch.
. . . .
I certainly think having degenerative disc disease

7

> [Drummond] would have some pain and some fatigue [INAUDIBLE] the fatigue and obviously her psychological problems would contribute to the pain and her perception of pain.

(Tr. 87-8). Dr. Winkler admitted upon examination by plaintiff's attorney that it was "certainly possible" that Drummond's back pain could be severe. (Tr. 89). However, she noted that there was "not very much treatment related to the lumbar disc disease" and "no evidence of neurological impairment, either by physical exam or by EMG NCV testing" or "any evidence of ongoing weakness, like motor weakness". (Tr. 90).

The ALJ found that Dr. Winkler's opinion was "largely consistent with the opinion of the State agency medical consultants" and that it "represents a well reasoned assessment of the claimant's ability to do work related activities, and considers all of the documented disorders." (Tr. 34).

Plaintiff contends that the ALJ made three errors in discounting the opinion of Dr. Taylor in favor of the opinion of Dr. Winkler. First, plaintiff argues that the ALJ improperly relied on speculation in finding that Dr. Taylor's opinion was based "almost entirely" on Drummond's subjective complaints. Plaintiff cites McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) where the court states:

> "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and <u>not due to his or her</u>

8

> own credibility judgment, speculation or lay opinion."
> Although we may not second-guess an ALJ's credibility
> judgments, such judgment[s] by themselves "do not carry
> the day and override the medical opinion of a treating
> physician that is supported by the record."

Quoting Morales v. Apfel, 225 F.3d 310, 317 (3rd Cir. 2000) (internal quotations omitted) (emphasis added by Tenth Circuit). The Tenth Circuit applied this holding in Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004) where the court found that an ALJ improperly rejected a treating physician's opinion based upon the ALJ's "own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'" The court said that the ALJ had "no legal or evidentiary basis" for either finding. Id.

Defendant responds by citing a case from this court which holds that an ALJ may "reject [a] treating physician's opinion if the physician's records reflect only the plaintiff's subjective beliefs regarding his disability, if office records do not support the physician's conclusions, or if the physician's treatment records do not support the physician's conclusion." Hayes v. Callahan, 976 F.Supp. 1391, 1395 (D.Kan. 1997) (citations omitted).

The court finds that the cases cited by both sides are not completely controlling. The ALJ in this case did not completely reject Dr. Taylor's opinion and did not discount Dr. Taylor's opinion solely on the grounds that Dr. Taylor relied upon plaintiff's subjective complaints. This distinguishes this case

9

from McGoffin and Langley, where the ALJ employed speculation to completely reject the opinions of treating physicians. This court has held, however, that an ALJ's speculation that a treating physician's opinion was based largely upon subjective complaints may provide grounds for remand, even when it is only part of the reason given by the ALJ for discrediting the opinion. Cook v. Astrue, 554 F.Supp.2d 1241, 1247 (D.Kan. 2008).

This case is also distinguishable from the facts in Hayes. In this case, Dr. Taylor's medical records do not reflect sole reliance upon plaintiff's subjective complaints. There is consensus from the doctors who reviewed the records that Drummond had degenerative disc disease, spinal stenosis and a disc herniation. Other evidence supporting Dr. Taylor's opinion includes prescription pain medication which Drummond received as well as the cortisone injection. Dr. Winkler admitted in her testimony that Drummond's back condition could cause severe pain. The only difference between Dr. Taylor's and Dr. Winkler's review of the records appears to be their assessments of the extent of Drummond's disability.

In short, the record is not comparable to the record in Hayes, and the record does not support the ALJ's statement that Dr. Taylor's opinion is based "almost entirely" on Drummond's subjective allegations. Following the Cook decision, the court shall hold that remand is warranted because the ALJ improperly

discounted Dr. Taylor's opinion.

Plaintiff's second criticism of the ALJ's evaluation of Dr. Taylor's opinion is that the ALJ relied upon speculation when he stated that Dr. Taylor "did not refer [Drummond] to an orthopedic specialist, indicating that she did not furnish full credibility to [Drummond's] allegations of excruciating pain." (Tr. 33). Defendant does not respond directly to this point.[2] We agree with plaintiff that the ALJ did engage in speculation by inferring a reason for Dr. Taylor's failure to refer Drummond to an orthopedic specialist. If the ALJ wanted to know why no referral was made, he could have made arrangements to ask Dr. Taylor. See 20 C.F.R. § 404.1512(e)(1). The ALJ stated that he felt it was unnecessary to "recontact" Dr. Taylor because the record was not inadequate. (Tr. 33). However, the record fails to explain why Dr. Taylor did not refer Drummond to an orthopedic specialist. The ALJ speculated that the reason was that Drummond's complaints of pain and disability were not completely credible to Dr. Taylor. Contrary to the ALJ's decision, the court believes this is an area where the

---

[2] Defendant does cite to Branum v. Barnhart, 385 F.3d 1268, 1274-75 (10th Cir. 2004) where a treating physician's opinion was rejected in part because the physician saw the claimant infrequently and mainly provided drug prescriptions. The ALJ in Branum also noted that the treating physician was not an orthopedic specialist. The ALJ in Branum did not reject the treating physician's opinion because he failed to refer the claimant to an orthopedic specialist. It should also be noted that there is MRI evidence which supports the treating physician in this case. Such evidence is absent in the Branum decision.

11

"inadequacy of the record" justifies additional inquiry as opposed to speculation. We also agree with plaintiff that Dr. Taylor's approval of prescription medicine for pain suggests that Dr. Taylor found Drummond's complaints credible. See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004) (listing pain medication as a factor to consider in assessing credibility of complaints of pain).

Finally, plaintiff's third argument regarding the ALJ's evaluation of Dr. Taylor's opinion is that the ALJ rejected the opinion without providing specific, legitimate reasons. As already mentioned, we disagree with this contention. The ALJ held that Dr. Taylor's opinion should not be given controlling weight, but the ALJ did not reject Dr. Taylor's opinion completely. He gave the opinion "some weight" toward the conclusion that plaintiff could perform sedentary work while otherwise finding "that Dr. Taylor's opinions are unsupported and not entitled to substantial weight." (Tr. 33). Contrary to plaintiff's contention, we do not consider the ALJ's statement that he gave "some weight" to Dr. Taylor's opinion to be mere "puffing." Moreover, some of the reasons the ALJ gave for discounting Dr. Taylor's opinion relate to factors an ALJ must consider in evaluating medical opinions. These considerations included Drummond's treatment relationship with Dr. Taylor, support from relevant evidence, and the abuse of pain medication.

B.  <u>Non-examining physician</u>

The ALJ gave substantial weight to the opinion of Dr. Winkler, the non-examining physician who reviewed the records and testified in this case after Drummond's death.  Plaintiff argues that this was legal error because the regulations provide that generally treating sources are given more weight than non-treating sources and examining sources are given more weight than non-examining sources.  § 404.1527(d)(1)&(2).  The Tenth Circuit said in <u>McGoffin</u> that it has "long held that 'findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'"  288 F.3d at 1253 (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987)).  The Tenth Circuit has described the gradation of authority accorded to medical opinions as follows:

> The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight.

<u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004) (interior citations and quotations omitted).

The ALJ suggested in his decision that Dr. Winkler's opinion deserved substantial weight because it was "well reasoned" and

13

because her opinion was based upon a thorough review of the record "including evidence not available at the time to the other medical sources who issued opinions." (Tr. 34). However, as plaintiff notes, the ALJ did not explain why Dr. Winkler's reasoning was superior to Dr. Taylor's. Nor did the ALJ explain why the extra records available to Dr. Winkler (which involved cardiac testing and the records of Drummond's death) would make any difference to a conclusion regarding Drummond's functioning capacity.

It appears that Dr. Taylor and Dr. Winkler considered the same records which are relevant to rendering an opinion regarding the extent of Drummond's disability. It is undisputed that Drummond had a back injury which was capable of causing severe pain. Dr. Taylor was the treating physician who had the advantage of seeing Drummond in person and performing an examination. See Robinson, 366 F.3d at 1084; Pieratt v. Barnhart, 2005 WL 679089 (D.Kan. 3/24/2005) (treating physicians are in a better position to evaluate subjective complaints of pain and fatigue). We agree with plaintiff that the ALJ deferred to the opinion of Dr. Winkler over the opinion of Dr. Taylor without providing a sufficient reason for doing so.[3]

---

[3] The ALJ mentions that Dr. Winkler's opinion is "largely consistent" with the opinion of the State agency medical consultants. (Tr. 34). But, there seem to be as many differences between those opinions as there are between Dr. Winkler's opinion and Dr. Taylor's opinion. The state agency consultant (Tr. 384-91) indicated that Drummond could lift and/or carry 20 pounds occasionally; Winkler (Tr. 86-7) said 15 pounds; Taylor (Tr. 396-

14

IV. CONCLUSION

The court finds that the ALJ improperly discredited the treating physician's opinion in this case on the basis of speculation regarding the basis for that opinion (whether it was premised "almost entirely" upon Drummond's subjective complaints) and speculation regarding the reason for failing to refer Drummond to an orthopedic specialist. The court further finds that the ALJ improperly favored the opinion of a non-examining physician over the treating physician in this case without providing adequate grounds for doing so. For these reasons, the court shall reverse and remand the decision to deny benefits in this case for further proceedings consistent with this opinion. This judgment and remand shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 21st day of April, 2010 at Topeka, Kansas.

                                     s/Richard D. Rogers
                                     United States District Judge

---

403) said less than 10 pounds. The state agency consultant indicated that Drummond had no limitations in push or pulling; Winkler and Taylor said there were limits in Drummond's right leg. The state agency consultant said Drummond could "frequently" engage in balancing, but Winkler and Taylor said Drummond could "occasionally" do balancing. The state agency consultant said Drummond could "frequently" crouch and crawl. This exceeded the limits listed by Winkler and Taylor. In sum, we do not find that the state agency consultant provides substantial grounds for crediting Dr. Winkler's opinion over Dr. Taylor's opinion.